UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

E'LON BROWN, )
)
        Petitioner, )
)
v. ) No. 2:19-cv-00300-JRS-MJD
)
BRIAN SMITH, )
)
        Respondent. )

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of E'lon Brown for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. ISF 19-02-0265. For the reasons explained in this Entry, Mr. Brown's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B.    The Disciplinary Proceeding**

Multiple documents detail the disciplinary proceeding in the case. The Court will outline

each document accordingly.

Two conduct reports were written in this case, each charging Mr. Brown with A-102, assault. Officer B. Alexander's report on February 21, 2019, states:

> On the day 02-20-19 at approx. 1804 I, C/O B. Alexander 139 was working in 18 south when I witnessed offender Brown, Elon #245008 walking into the 185 D-side dayroom. I gave offender Brown multiple orders to return to his bunk but he refused. I extended my right arm and offender Brown proceeded to push my hand away and then push me backwards. Offender Brown turned and walked in front of the D-side officers desk where I followed him to place him in restraints when he struck me in the face. O.C. was then deployed to Brown's facial region. Brown attempted to lunge at me so I deployed a 2nd burst of O.C. Offender Brown then walked to the D-side latrine where I ordered him to cuff up. After he refused, I C/O B. Alexander 139 then pulled Brown onto the ground and applied mechanical restraints. QRI arrived and escorted Brown to HCU then DRHU I then was taken to the hospital for injuries sustained during the event.

Dkt. 9-1. Officer D. Pryle's corroborating report on February 20, 2019, states:

> On 02-20-19 approximately at 1805 I c/o Pryle 290 watched offender Elon Brown doc 245008 shove officer Alexander after offender was instructed to go back to his cube. Offender Brown, Elon proceeded to argue with c/o Alexander, and refused to go to his bed. Then offender Brown, Elon hit officer Alexander in the face.
>
> Officer Alexander was sent to the hospital after the incident happened.

Dkt. 9-2.

In addition to the officers' conduct reports, Sgt. Walker further documented the incident on an Incident Report Form dated February 20, 2019, as follows:

> On 2/20/19 at approx. 1804 in 18 South Officer Pryle #290 called for QRT after observing Offender Brown strike Ofc. B. Alexander #139 in the face. Offender Brown entered the D-side dayroom to take bag of confiscated property and officer Alexander gave him multiple orders to return to his bed. Brown attempted to walk through Ofc. Alexander. Ofc. Alexander put his hand up, the offender walked in to him and offender brown pushed him then walked away. Ofc. Alexander followed, ordered the offender to cuff up and Offender Brown slapped Alexander in the face. Ofc. Alexander deployed a one second burst of OC in the face of Brown. Offender Brown rushed towards the officer and he moved out of the way. The Offender then walked to the bathroom and refused orders to submit to restraints. Ofc. Alexander attempted to place him in restraints and the offender physically

resisted. Physical handling was used to gain compliance and he was placed in restraints. QRT Responded and escorted Offender Brown to HCU for evaluation. He was cleared by Nursing staff, escorted to DRHU, read the OC administrative warning and given a decontamination shower. Brown was reassigned to DRHU A-5 and received a 102 (Battery) Conduct Report. Ofc. Alexander was contaminated with OC and was taken to the hospital for treatment of an injury under his right eye and severe headache. The offender also broke Ofc. Alexander's glasses valued at $400.

Action Taken: Officer Alexander was contaminated with OC and taken to the hospital for treatment of an injury under his right eye and severe headache. He did not return to work and received medical documentation restricting duty. Offender Brown was taken to HCU for evaluation and the DRHU for decontamination shower. He will receive a 102 (Battery) Conduct Report. Brown was reassigned to DRHU A-5.

Dkt. 9-3.

Officer Alexander's injuries of a knot under his right eye and a severe headache were documented in an Indiana State Employee Injury/Illness Report dated February 21, 2019. Dkt. 9-4. This report stated that Officer Alexander was "[a]ssaulted by an offender[.]" *Id.* The report recorded the sequence of events that lead to Officer Alexander's injuries as follows: "Offender Elon Brown 245008 was refusing orders to go back to his bunk during count. He pushed me then struck me in the face." *Id.* Officer Pryle was listed as a witness to the occurrence. *Id.* Three photographs were taken after the incident, two that show a red mark under Officer Anderson's right eye and one of his broken glasses. *Id.*

Mr. Brown received notice of the assault charge on February 26, 2019. Dkt. 9-6. Mr. Brown signed the notice form and pleaded not guilty, requested a lay advocate, requested to call offenders Maurice Smith and Kevin Martin as witnesses, and requested that video evidence and a written statement be considered at his hearing. *Id.* A lay advocate was appointed to Mr. Brown on March 1, 2019. Dkt. 9-7.

Written statements were submitted by offenders Smith and Martin in lieu of live testimony.

In his February 27, 2019, written statement Smith stated:

> Brown was about to get ready for prayer the officer came in rude and walked into the bathroom and snatched Brown bag then tossed it into the dayroom then after that Brown went to go grab his bag which his muslim prayer oil is in then as he grab it the officer snatched the bag back then after that the officer touched offender Brown which was not professional and he was planing on maseing some one from the start.

Dkt. 9-11 (errors in original). In his February 28, 2019, written statement Martin stated:

> Officer Alexander came in the dorm very aggressive immediately slammed inmate on fence at door. Shortly after they called count at that time he took E. Brown shower bag after short time E. Brown asked for it back but was on his Bunk Officer Alexander then threw it in middle of TV Day room. Then proceed down cube one trying to start a confrontation playing with handcuffs and talking fowly to everyone. E. Brown went to pick up his stuff and officer then grabbed him E. Brown stated get your hands off me as his back was turned and walking back to bunk. Officer grabbed him two more times as he was walking back. E. Brown stated get hands off me offering no resistance he then maced him E Brown then ran into shower and Alexander followed alone While no other C.O followed for couple mins. He was carried out after Sergeant came in. C.O. Eckert stated he had asked her if she knew how to do physical contact report and she better get ready tonight.

Dkt. 9-12 at 1-2 (errors in original).

Mr. Brown submitted his witness statement dated February 28, 2019. Dkt. 9-9. Mr. Brown's written statement makes several admissions regarding the incident[1] with Officer Alexander, including the facts that he did not go back to his bunk as ordered, that he pushed Alexander multiple times, that he attempted to take the OC spray, and that he took a fighting stance against Alexander out of self-defense. *Id.*

On February 28, 2019, Sgt. Nauman, the disciplinary hearing officer (DHO) completed his report of disciplinary hearing video evidence review and summarized the incident:

---

[1] "I attempted to walk around [Alexander] to retrieve my belongings and he grabs me . . . . So I stop and pushed him off of me using one arm to establish some distance between us . . . . I again attempt to walk around [Alexander] . . . again he grabs me . . . . Again I pushed him off of me using only one arm . . . . I attempted to swipe his weaponized spray can from out of my face and assumed my fighting stance in order to back him away." *See* dkt. 9-9.

4

> On 02/28/19 I Sgt Nauman reviewed the date and time as requested by you. During the time reviewed, I observed the staff member in the dayroom and tossing a shirt and socks towards the chairs. He can be seen entering and exiting cubes. You approach him in the dayroom and he raises his hand appearing to tell you to return to your bed. You continue to walk forward and the staff member places his hand on you and you shove his arm away forcing him to take a step back. He point towards your bed area and you continue to walk forward. he again places his hand on you and again you shove his hand way. he removes his OC and you and him walk towards the officers desk. As he approaches you turn around. The camera skips and he can be seen spraying you with OC as you charge forward with your hands up. You are then seen entering the latrine. QRT then can be seen escorting you out of the dormitory.

Dkt. 9-10. The Court has reviewed the videos marked as Confidential Exhibits H and I.

At the conclusion of Mr. Brown's disciplinary hearing held on March 1, 2019, he was found guilty of assault based on the video and staff reports and photographs. Dkt. 9-9. The DHO determined that the witness statements contradicted the video evidence. *Id.* Mr. Brown received sanctions of a 180 day loss of earned credit time and a one-step demotion in credit class. *Id.*

Mr. Brown's first and second level appeals were denied and this habeas action followed. Dkts. 9-13 and 9-14.

### C. Analysis

The Court construes Mr. Brown's petition as raising the following three grounds to challenge his conviction: (1) the video evidence that was the basis of the DHO's decision had been tampered with "in an attempt by the administration to evade liability;" (2) Officers Alexander and Pryle, who filed the conduct reports in this case, conspired and "fabricated correlated testimonies in an attempt to deprive the plaintiff of due [process] rights;" and (3) Officer Alexander initiated an assault on Mr. Brown out of discrimination "in violation of policy and procedure." Dkt. 1 at 3.

### 1. Sufficiency and Reliability of the Evidence

Mr. Brown makes two claims regarding the sufficiency and reliability of the evidence. The Court will address each claim in turn.

**a. Video evidence**

Mr. Brown argues that the video footage "skips at the point where the alleged assault takes place which is a clear indication that the video had been edited and tampered with in an attempt by the administration to evade liability." Dkt. 1 at 3. Mr. Brown further argues that the DHO had "first hand knowledge of the tampered video evidence" and used the video to find him guilty. *Id.* The respondent argues that while the strike to Officer Alexander's face was not captured in the video, the video does show Mr. Brown making contact with Officer Alexander two times to substantiate the assault charge. Dkt. 9 at 11. Moreover, additional corroborating conduct and medical reports and photographs establish that Mr. Brown hit Officer Alexander in the face. *Id.*

Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989). Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for

the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

The DHO based his decision not solely on the video evidence in this case but in conjunction with conduct reports, a medical report, and photographs of Officer Alexander's injury and damage to his glasses. Mr. Brown's own written statement supports a finding that he refused direct orders and made contact with Officer Alexander consistent with an assault charge. The Court finds Mr. Brown's conviction was based upon "some evidence" in compliance with the standard. Furthermore, Mr. Brown's theory that the evidence was tampered with is not supported by anything other than his own suspicion. For these reasons, Mr. Brown's first ground challenging the evidence fails.

**b. Officers Alexander and Pryle's conduct reports**

Mr. Brown argues for the first time in his petition that Officers Alexander and Pryle conspired together to fabricate their testimonies in their corroborating conduct reports. Dkt. 1 at 3. Mr. Brown stated he could not previously raise this issue because "[a]ccording to D.O.C. adult disciplinary policy one can only appeal issues involving the administration failing to uphold due process requirements within the policy and administrative procedure." *Id.* at 4. Mr. Brown had a chance to raise this issue at his hearing and in each of his subsequent appeals but did not. The Court finds that Mr. Brown's failure to raise this issue constitutes a failure to exhaust administrative remedies. *See* 28 U.S.C. § 2254(b)(1)(A) (the exhaustion requirement applies to habeas petitions); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (the petitioner "must raise the issue at each and every level in the state court system"). "A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits."

*Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citation omitted). Mr. Brown's general statement that he could only appeal issues involving the administration failing to uphold due process requirements within the policy and administrative procedure does not demonstrate cause and prejudice.

Mr. Brown's argument is also insufficient on its merits for the same reasons as his challenge to the video evidence. The Court finds Mr. Brown's conviction was based upon "some evidence" inclusive of and beyond the conduct reports submitted by the officers. Further, Mr. Brown's theory that Officers Alexander and Pryle engaged in a conspiracy to fabricate their respective conduct reports is not supported by anything other than his own suspicions. For these reasons, Mr. Brown's second ground challenging the evidence fails.

**2. Mr. Brown's allegations of assault, discrimination, and violation of policy and procedure**

Mr. Brown argues that it was Officer Alexander who initiated the assault on him in violation of policy and procedure. Dkt. 1 at 3. Mr. Brown stated that he "has reason to believe that he was being targeted by [Alexander] and the administration who's been blatantly dismissive of all facts at every stage of the disciplinary process." *Id.* However, Mr. Brown has not shown by any other evidence aside from his own suspicions that he was treated differently than any other inmate who refused direct orders from an officer or who was similarly charged with assault or battery. Therefore, any claim of discrimination under the Equal Protection Clause fails.

To the extent that Mr. Brown argues that the sanctions imposed against him were done so arbitrarily, the Court is unpersuaded. Mr. Brown does not argue that he did not receive proper notification of his hearing, have an opportunity to be heard by an impartial decision maker, was prevented from requesting or presenting evidence, or did not receive a written statement by the

factfinder of the evidence relied upon and the reasons for the discipline administered. These are the protections against arbitrary decisions.

It is well settled that claims relating to alleged violations of Indiana Department of Correction policies and procedures are not cognizable in a case for habeas relief. *See, e.g., Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Finally, Mr. Brown argues that any actions he took were a result of defending himself against Officer Alexander. However, the Seventh Circuit has consistently held that there is no constitutional right to self-defense in a prison disciplinary context. *See Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) (evidence of self-defense is not exculpatory); *Scruggs*, 485 F.3d at 938-39; *Rowe v. DeBruyn*, 17 F.3d 1047, 1049 (7th Cir. 1994).

For these reasons, Mr. Brown's third ground challenging his conviction fails.

**D.     Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Brown to the relief he seeks. Accordingly, Mr. Brown's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/9/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

E'LON BROWN
6076 Tybalt Lane
Indianapolis, IN 46254

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov